IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| DONALD RAY SPARKS, JR., | § | |
| Institutional ID No. 1780285, | § | |
| SID No. 7402732, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:19-CV-00145-BU |
| | § | |
| FELIX VIGIL, *et al.*, | § | |
| | § | |
| Defendants. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff DONALD RAY SPARKS, JR., an inmate currently incarcerated at the Texas Department of Criminal Justice ("TDCJ") Clements Unit and proceeding pro se, filed this 42 U.S.C. § 1983 action on June 27, 2019, alleging excessive use of force by prison officials at the TDCJ French Robertson Unit. *See* Dkt. No. 1 at 3. The Court granted Sparks permission to proceed *in forma pauperis*, which subjects his complaint to the Court's preliminary screening measures under 28 U.S.C. § 1915(e)(2). Dkt. No. 7. And because Sparks brings his suit against government officials, his Complaint is also subject to screening under 28 U.S.C. § 1915A. United States District Judge Sam Cummings transferred the case to the undersigned for pre-screening pursuant to 28 U.S.C. 1915(A) and 1915(e)(2)(B). Dkt. Nos. 7, 9. Sparks has not consented to proceed before a magistrate judge.

1

I. FACTUAL BACKGROUND

Sparks claims that prison security officials at the Robertson Unit used excessive force against him during an incident on January 4, 2019. *See* Dkt. No. 1. Sparks states that after leaving the "chow hall" around 5:30 p.m., Officer Felix Vigil stopped Sparks and asked him to present his identification card. Dkt. No. 24 at 1. Sparks stated that Vigil did not say why he needed Sparks's identification card, and when Sparks gave it to him, Vigil broke it, threw it away, and threatened Sparks with a beating if he did not return to his cell. *Id.*

Without providing facts for the intervening events, Sparks claims that other officers began beating him. *See id*. Sparks states that Lieutenant Allen Turner was the first to grab him, twist him around, and punch and kick Sparks. *Id.* at 6. Sparks also claims that Sergeant Brandon Pulliam "was punching me in the face . . . [and] kicking me." *Id.* at 2. Sparks states that Sergeant Cyle Hunnel was next to Pulliam, and was also punching and kneeing Sparks. *Id.* at 3. Sparks states that Officer Michael Garcia participated in the beating by "holding and binding [Sparks's] body," causing him to lose consciousness. *Id.* at 5. Sparks states that Garcia also punched and kicked him. *Id.*

As a result of the alleged beating, Sparks states that he had a swollen head, back, and ribs, a bloody nose and lip, and two black eyes. *Id.* at 2, 7. He states that the officers told him that he was uninjured, and he did not receive any medical attention from the Robertson Unit medical staff. *Id.* at 3.

In the Complaint and more definite statement, Sparks provides sparse facts which the authenticated records both confirm and provide additional context of the incident. The

records include video of the use-of-force incident, reports from the officers involved, and the related medical records.

Reports from Defendants state that prior to the use-of-force, Sparks created a disturbance in a hallway and refused to follow staff orders. At that time, Sparks picked up a "wet floor" sign and began threatening staff.

The use-of-force video begins with Sparks standing with a yellow wet floor sign in his hand, talking with Turner who stands with other prison security officers. Sparks shouts at the officers, stating that he was not "going to play," and that he had "99 years and didn't care." Turner repeatedly asked Sparks to calm down and put down the sign but Sparks refuses. Throughout the video, Sparks can be seen grabbing at his waistband or pant front.

After holding officers at bay for three minutes, several officers rush Sparks, grabbing his arms and head, and force him to the ground. On the ground, several officers strike Sparks with their fists, and grab his legs and arms, twisting them around. The officers stopped striking Sparks once he was in hand restraints. After applying leg restraints, the officers rolled Sparks to his side. Once Sparks was placed on his side, the officers' use of force appears to stop.

Sparks was taken by medical gurney to the infirmary, where a nurse examined his face. When asked by both the nurse and a prison security officer, Sparks audibly denied any injury. Medical records also reflect that he showed no external injuries and denied any injury when asked. Sparks was then transported to an Ad-Seg cell.

Sparks asks the Court for "compensation for assault and battery," seeking monetary damages from each defendant. Dkt. No. 1 at 4.

## II. PROCEDURAL HISTORY

After review of Sparks's Complaint and the authenticated records, the undersigned entered an order for an evidentiary hearing in accordance with *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985) and 28 U.S.C. § 1915. Dkt. No. 17. The Court later vacated that hearing after receiving a nonsensical notice from Sparks.[1] Dkt. No. 18.

Sparks later motioned the Court, seeking leave to amend his complaint to a class action and add various news agencies and medical facilities as defendants. *See* Dkt. No. 20 at 1. The Court granted Sparks leave to amend and ordered him to complete a new Section 1983 Amended Complaint form to properly add new claims and defendants, and to do so within 20 days. Dkt. No. 22 at 2-3. As of the date of this filing, Sparks has not complied.

Sparks's complaint could be dismissed on the above basis alone under Federal Rule of Civil Procedure 41(b). But the undersigned determined to proceed with the preliminary screening of Sparks's claims by ordering him to respond to a questionnaire under *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976). Dkt. No. 23. Sparks timely completed the Court's questionnaire as a more definite statement of his claims. Dkt. No. 24. And because his responses to the questionnaire reflected none of the senselessness of his Notice, the undersigned continued screening Sparks's claims.

---

[1] Sparks's Notice was styled as a class action suit against the United States in which he purports to impose fines on the United States government and various unidentified officers "because my consciousness has been violated which is my head and mind." Dkt. No. 18 at 1-2. Sparks also claims to "have the power to transmute base metals into gold, I am the fifth element and the obelisk object." Id. at 2. Sparks signs the Notice "King Donald" and "King David Bloodline." Id.

After now reviewing Sparks's Complaint, his questionnaire responses, and the authenticated records provided by the TDCJ, the undersigned enters these Findings, Conclusions, and Recommendations.

### III. PRELIMINARY SCREENING

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (2016); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' *in forma pauperis* claims as

frivolous based on "medical and other prison records if they are adequately identified and authenticated" (internal quotations omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). Plaintiffs must plead enough facts to demonstrate that their claims have "substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam). This means that the facts pled must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.* 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

IV. DISCUSSION AND ANALYSIS

Sparks alleges a violation of his Eighth Amendment rights by Defendants using excessive force against him, in both their official and individual capacities as employees of TDCJ. Dkt. No. 1 at 3.

A. Official Capacity Claims

Sparks has no official capacity claim against the officers. In *Will v. Mich. Dep't of State Police,* the Supreme Court held that a suable "person" under Section 1983 does not

include a state, a state agency, or a state official sued in his official capacity for damages. 491 U.S. 58, 71 (1989). The rationale underpinning this conclusion is that a Section 1983 claim against a person in that person's official capacity is, in effect, a suit against that person's office, and thus is no different than a suit against the state itself or the government entity that employs the person. *Id*. Here, Sparks's claims for official capacity liability of TDCJ employees fail because, in this capacity, Defendants are not suable persons under Section 1982.

Moreover, the Eleventh Amendment bars suits for money damages against state officials who are sued in their official capacities. *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253-56 (2011). As Sparks seeks only monetary damages for his claims, the official capacity claims against Defendants as state officials are barred by the Eleventh Amendment.

For these reasons, the undersigned RECOMMENDS the Court DISMISS Sparks's claims against Defendants in their official capacities as frivolous and for failure to state claim on which relief may be granted.

B. Individual Capacity Claims

A plaintiff states an individual capacity claim for a constitutional violation by alleging facts demonstrating that a defendant was personally involved in the alleged constitutional violation. *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) (finding that a plaintiff bringing a claim of constitutional violation must "specify the personal involvement of each defendant.").

The core judicial inquiry in an Eighth Amendment excessive-use-of-force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). To determine "whether a use of force was wanton and unnecessary," a court must evaluate the need for the force, "the relationship between the need and the amount of force used, the threat reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 8 (internal quotation and citation omitted).

In the questionnaire, the Court asked Sparks to provide all factual details regarding the personal involvement of Defendants, and Sparks states that each Defendant personally punched and kicked him.

Sparks's facts, however, do not paint a full picture of the events leading up to the use of force. The authenticated records confirm certain aspects of Sparks' account while also providing details not provided by Sparks, including his aggressive behavior and non-compliance with the officers. Where a prisoner's claims are directly contradicted by adequately identified and authenticated prison records, the Court may dismiss those claims as frivolous. *Banuelos*, 41 F.3d at 234.

In the records use-of-force video and officer incident reports, Sparks was threatening prison officials, including Defendants, with a floor sign, and refusing to obey multiple commands to stand down. Even when Turner tried to de-escalate the situation, Sparks became increasingly agitated and hostile until officials grabbed him. Once taken to the ground, the officers' own reports state that officers did punch Sparks and twist his limbs

8

to restrain him in hand and leg restraints.² Once restrained, officers ceased using force against Sparks, placed him on a gurney, and took him for a medical evaluation. This broader context demonstrates that Sparks's claim fails as a matter of law. *See Wilson*, 926 F.2d at 483–84 (permitting a court to consider reliable evidence such as authenticated prison records to supplement the plaintiff's allegations).

Further, Sparks has not alleged an injury from the use of force beyond *de miminis* physical harm. Sparks stated that he suffered a swollen head, back, and ribs, a bloody nose and lip, and two black eyes because of the force. Dkt. No. 24 at 2, 7. Otherwise, the authenticated record reflects that Sparks refused medical treatment. Sparks does not claim to have needed medical treatment or to have suffered from a lack of medical care. By Sparks own account, he suffered at most a *de minimis* injury. *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999) (stating that a prisoner must suffer from more than a *de minimis* physical injury to support an Eighth Amendment excessive force claim); *see also Wertish v. Krueger*, 433 F.3d 1062 (8th Cir. 2006) (finding that minor scrapes and bruises were *de minimis* injuries that support dismissal of excessive force claims).

Although being given an opportunity by the Court to state his best case, Sparks has failed to bring forward specific facts plausibly showing that Defendants' use of force was wanton or malicious, or was more than necessary to gain his compliance. Accordingly, for these reasons, the undersigned RECOMMENDS that Sparks's claim against Defendants in

---

² Pulliam's written report confirms that he struck Sparks with a closed fist.

their individual capacities be DISMISSED with prejudice as frivolous and for failure to state a claim on which relief may be granted.

## V.  CONCLUSION

For the reasons explained in these Findings, Conclusions, and Recommendations, the undersigned RECOMMENDS that Sparks's claims against all Defendants in both their individual and official capacities be DISMISSED as frivolous and for failure to state a claim on which relief may be granted.

## VI.  RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## VII. TRANSFER OF CASE

Having completed the preliminary screening of Sparks' claims under 28 U.S.C. §§ 1915(e)(2) and 1915A, the undersigned ORDERS that this case be TRANSFERRED back to the docket of the Senior United States District Judge and designated as Civil Action No. 1:19-CV-00145-C.

ORDERED this 10th day of March, 2022.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE